IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MALIK JONES,

    Plaintiff,                         No. 2:09-cv-2133 KJM KJN P

    vs.

C. PLESSAS, et al.,

    Defendants.                   FINDINGS AND RECOMMENDATION

_____/

I. Introduction

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983.  Pending before the court are defendants'[1] motions to dismiss filed on the grounds that plaintiff failed to exhaust administrative remedies, and failed to comply with the California Tort Claims Act.  (Dkt. Nos. 42, 53.)  Plaintiff filed oppositions.  (Dkt. Nos. 51, 56.)  No reply was filed.  After carefully reviewing the record, the undersigned concludes that defendants' motions to dismiss should be granted.

        A.  Legal Standard re Exhaustion

        The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

---

[1] The motions were filed by all defendants except defendants Cosby and Martines.  (See Dkt. No. 57.)

1

1  § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional
2  facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).
3  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S.
4  516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of
5  confinement, whether they involve general circumstances or particular episodes, and whether
6  they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

7  Exhaustion of all "available" remedies is mandatory; those remedies need not
8  meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v.
9  Churner, 532 U.S. 731, 740 n.5 (2001). Even when the prisoner seeks relief not available in
10 grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532
11 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative
12 process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.
13 The fact that the administrative procedure cannot result in the particular form of relief requested
14 by the prisoner does not excuse exhaustion because some sort of relief or responsive action may
15 result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes
16 of exhaustion requirement include allowing prison to take responsive action, filtering out
17 frivolous cases, and creating administrative records).

18 A prisoner need not exhaust further levels of review once he has either received
19 all the remedies that are "available" at an intermediate level of review, or has been reliably
20 informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d
21 926, 934-35 (9th Cir. 2005). Because there can be no absence of exhaustion unless some relief
22 remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief
23 remained available, whether at unexhausted levels or through awaiting the results of the relief
24 already granted as a result of that process. Brown, 422 F.3d at 936-37.

25 As noted above, the PLRA requires proper exhaustion of administrative remedies.
26 Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

        The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution; (2) formal written appeal on a 602 inmate appeal form; (3) second level appeal to the institution head or designee; and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

        Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court may look beyond the pleadings to determine whether a plaintiff exhausted his administrative remedies.  Id. at 1119-20.

        B.  Plaintiff's Allegations

        This action is proceeding on the third amended complaint ("TAC"), filed November 16, 2010.  (Dkt. No. 25.)  Pursuant to findings and recommendations issued October 22, 2010 (dkt. no. 22), and the district court's December 10, 2010 order (dkt. no. 26), various claims were dismissed, and this action now proceeds on the following four claims:

1    1. Plaintiff alleges that defendants A. Pickens, Martines, Laeres,[2] Plessas, Smith, Kissinger and Fletcher used excessive force and failed to protect plaintiff on June 25, 2008. (Dkt. No. 25 at 4.)  Plaintiff included state law claims of assault and battery and the intentional infliction of emotional distress.

2.    On October 8, 2008, plaintiff alleges defendant Jackson used excessive force, in violation of the Eighth Amendment, and raises state law claims of assault and battery and the intentional infliction of emotional distress.   (Dkt. No. 25 at 7.)

3.    Plaintiff alleges defendants Cosby, Wright, Boretz, and Krauss[3] retaliated against plaintiff for his litigation by their actions on June 25, 2008.  (Dkt. No. 25 at 5, ¶¶ 49, 52.)

4.    Plaintiff alleges defendants A. Pickens, Martines, Laeres, Smith and Kissinger were deliberately indifferent to plaintiff's serious medical needs on June 25, 2008.  (Dkt. No. 25 at 4-5, ¶¶ 46-53.)

C.    Exhaustion of Administrative Remedies

Defendants have submitted documents demonstrating that plaintiff submitted 26 grievances at High Desert State Prison that were accepted for review in 2008.  (Dkt. No. 42 at 5-7; 42-2 to 42-4.)  The court reviewed those grievances, and none of the 26 grievances raised facts underlying the remaining four claims alleged in the TAC.  (Id.)

Defendants provided the declaration of L. D. Zamora, Chief of the Offices of Third Level Appeals-Health Care (OTLA).[4]   (Dkt. No. 42-1.)  Zamora declared that the OTLA maintains a computer database known as the Medical Appeals Tracking System in which all

---

[2] Defendant Laeres was incorrectly named as defendant Lorad in the TAC.  (Dkt. No. 53 at 4 n.1.)

[3] Defendants Boretz and Krauss were incorrectly named as defendants Boras and Cross in the TAC.  (Dkt. No. 53 at 5 n.2.)

[4] Until August 2008, all final level inmate appeals were reviewed by the Inmate Appeals Branch.  Effective August 1, 2008, appeals involving only medical issues are processed by the Office of the Federal Receiver appointed in the class action Plata v. Schwarzenegger, Case No. 01-cv-1351 (N.D. Cal.).  (Dkt. No. 42-1 at 38-39.)

appeals received by the OTLA are logged, whether or not the appeals are ultimately accepted or screened out. (Dkt. No. 42-1 at 39.) The Medical Appeals Tracking System reflected that plaintiff submitted no medical appeals from August 2008, the date OTLA began tracking medical appeals, to February 11, 2011. (Id.)

Defendants also filed a declaration of D. Frazier, Health Care Appeal Coordinator, who provided a record of the health care appeals submitted by plaintiff from December 26, 2007, to February 11, 2011. (Dkt. No. 42-1 at 44-49.) This record reflects plaintiff filed the following appeals on or about the time of the incidents remaining at issue here:

- On August 21, 2008, plaintiff sought an arm brace;
- On September 11, 2008, plaintiff sought a TENS unit, sweatsuit and thermal underwear;
- On October 22, 2008, plaintiff requested numerous braces;
- On October 29, 2008, plaintiff sought to see a doctor;
- On November 13, 2008, plaintiff asked for an appointment to discuss x-ray results;
- On November 14, 2008, plaintiff sought return of his wheelchair; and
- On November 24, 2008, plaintiff requested a wrist brace.

(Dkt. No. 42-1 at 44-45.) On December 16, 2008, plaintiff sought medication and on December 26, 2008, plaintiff sought an eggcrate mattress. (Dkt. No. 42-1 at 45.) None of these appeals raise allegations at issue in the remaining four claims of the TAC.

On October 14, 2008, plaintiff submitted an informal staff complaint to medical appeals, which was screened out and returned to plaintiff on October 14, 2008, with the notation "this is a use of force issue not an appeal issue." (Dkt. No. 42-1 at 45.) The appeal history does not reflect the date of the alleged use of force, or the nature or context of the alleged use of force. On December 15, 2008, the staff complaint was returned to plaintiff and was "deemed not to be a staff complaint by the HCM and CDW." (Id.) Plaintiff does not identify this appeal as the appeal addressing plaintiff's October 8, 2008 claim of excessive force against defendant Jackson.

appeals received by the OTLA are logged, whether or not the appeals are ultimately accepted or screened out. (Dkt. No. 42-1 at 39.) The Medical Appeals Tracking System reflected that plaintiff submitted no medical appeals from August 2008, the date OTLA began tracking medical appeals, to February 11, 2011. (Id.)

Defendants also filed a declaration of D. Frazier, Health Care Appeal Coordinator, who provided a record of the health care appeals submitted by plaintiff from December 26, 2007, to February 11, 2011. (Dkt. No. 42-1 at 44-49.) This record reflects plaintiff filed the following appeals on or about the time of the incidents remaining at issue here:

- On August 21, 2008, plaintiff sought an arm brace;
- On September 11, 2008, plaintiff sought a TENS unit, sweatsuit and thermal underwear;
- On October 22, 2008, plaintiff requested numerous braces;
- On October 29, 2008, plaintiff sought to see a doctor;
- On November 13, 2008, plaintiff asked for an appointment to discuss x-ray results;
- On November 14, 2008, plaintiff sought return of his wheelchair; and
- On November 24, 2008, plaintiff requested a wrist brace.

(Dkt. No. 42-1 at 44-45.) On December 16, 2008, plaintiff sought medication and on December 26, 2008, plaintiff sought an eggcrate mattress. (Dkt. No. 42-1 at 45.) None of these appeals raise allegations at issue in the remaining four claims of the TAC.

On October 14, 2008, plaintiff submitted an informal staff complaint to medical appeals, which was screened out and returned to plaintiff on October 14, 2008, with the notation "this is a use of force issue not an appeal issue." (Dkt. No. 42-1 at 45.) The appeal history does not reflect the date of the alleged use of force, or the nature or context of the alleged use of force. On December 15, 2008, the staff complaint was returned to plaintiff and was "deemed not to be a staff complaint by the HCM and CDW." (Id.) Plaintiff does not identify this appeal as the appeal addressing plaintiff's October 8, 2008 claim of excessive force against defendant Jackson.

In addition, defendants provided the declaration of D. Foston, Chief of the Inmate Appeals Branch, who filed a log of plaintiff's appeals, except for medical appeals submitted after August 1, 2008, that were "accepted and/or received and screened out at the Directors' level between January 1, 1997, and February 9, 2011." (Dkt. No. 42-1 at 3.) Plaintiff filed two appeals concerning misuse of force, HDSP-07-3212 and HDSP-10-0300, but those were based on incidents that occurred on December 3, 2007, and July 19, 2010. (Dkt. No. 42-1 at 2-3.) Plaintiff filed one appeal regarding mental health care, HDSP-07-2883, but it was based on an incident that took place on November 27, 2007. (Dkt. No. 42-1 at 2.)

Another appeal, HDSP-08-0693, referred to defendant Wright. (Dkt. No. 42-2 at 49.) However, plaintiff challenged a rules violation report issued December 8, 2007, and defendant Wright served as a witness. (Id.) Plaintiff was not challenging the actions of defendant Wright in appeal HDSP-08-0693, and plaintiff did not include factual allegations referenced in the four remaining claims of the TAC in appeal HDSP-08-0693.

Appeal HDSP-08-3103 challenged a rules violation report issued against plaintiff for delaying a peace officer in connection with plaintiff's alleged refusal to accept a cellmate. (Dkt. No. 42-3 at 48-50.) This appeal does not contain any factual allegations set forth in the four remaining claims of the TAC.[5]

Finally, on October 28, 2008, plaintiff filed appeal HDSP-08-16476 claiming "medical staff [and] custody officers constantly retaliate against [plaintiff] for exercising [his] rights, treating [his] [illegible] with deliberate indifference by threatening to take [his] [illegible] appliances." (Dkt. No. 42-4 at 49.) In this appeal, plaintiff also challenged an attempt to involuntarily take plaintiff's blood,[6] on an unidentified date, and appears to claim inadequate

---

[5] Plaintiff attempted to challenge the disciplinary in the TAC, but the district court dismissed the challenge on December 10, 2010. (Dkt. No. 26 at 3.)

[6] Plaintiff also attempted to challenge defendants' attempt to involuntarily take plaintiff's blood, but the court found plaintiff failed to state a cognizable civil rights claim in connection

medical treatment for his arm and back. (Dkt. No. 42-4 at 49, 50.) This appeal was cancelled based on plaintiff's refusal to attend the appeal interview, but also informed plaintiff that "[t]his exhausts all administrative remedies per Title 13, Section 3084.4." (Dkt. No. 42-4 at 50.)

Plaintiff generally references "constant retaliation" for exercising unidentified rights, but plaintiff makes no mention of the June 25, 2008 incident, or facts underlying the incident on which plaintiff bases his current retaliation claims against defendants Cosby, Wright, Boretz and Krauss. Thus, HDSP-08-3103 cannot serve to exhaust plaintiff's retaliation claims. In addition, in appeal HDSP-08-3103, plaintiff did not include facts about any alleged shackling or use of force on October 8, 2008. (Dkt. No. 42-4 at 49, 51.) Therefore, appeal HDSP-08-3103 cannot serve to exhaust plaintiff's alleged excessive force claim against defendant Jackson.

The log provided by Foston reflects that no appeals by plaintiff were screened out in June or July of 2008. (Dkt No. 42-1 at 10.) Two appeals were screened out on October 6, 2008 (staff complaints), and on October 17, 2008 (living conditions), with the notation "must be completed through 2nd level." (Dkt. No. 42-1 at 11.) The staff complaints were screened out prior to the alleged October 8, 2008 incident herein, and the remaining four claims do not challenge plaintiff's living conditions.

Defendants also provided the declaration of T. Robertson, Appeal Coordinator at HDSP, who provided a record of appeals received from plaintiff at HDSP as of September 14, 2010, except for medical appeals received since August 2008. (Dkt. No. 42-1 at 18.) The first appeal received after June 25, 2008, was an ADA claim received on July 11, 2008. (Dkt. No. 42-1 at 32.) The first appeal received after October 8, 2008, was another ADA claim received on October 21, 2008. (Id.) Neither of these appeals contain facts underlying the instant claims.

Review of plaintiff's administrative appeals demonstrates that plaintiff is familiar with the appeals process, and confirms plaintiff successfully pursued multiple appeals through

---

with this claim. (Dkt. No. 22 at 4.)

1 the third level of review, including appeals concerning staff complaints. Review of these
2 documents demonstrates that plaintiff did not file a first level appeal raising the allegations
3 underlying the remaining four claims in the TAC.

4     Plaintiff is required to rebut the evidence that he failed to exhaust his
5 administrative remedies prior to filing the instant action. Plaintiff raised multiple claims against
6 twelve different defendants, yet failed to provide copies[7] of any appeals he allegedly wrote
7 raising the four remaining claims, despite being granted an extension of time in which to do so.
8 Defendants' motion contained logs of plaintiff's administrative appeals, as well as copies of
9 administrative appeals. Plaintiff does not identify any of the appeals provided by defendants,
10 even those screened out, as addressing the instant remaining claims.

11     Defendants have established that at the time plaintiff filed suit, all available
12 administrative remedies had not been exhausted for the four remaining claims at issue in the
13 TAC. Therefore, plaintiff's remaining four claims should be dismissed as unexhausted unless
14 plaintiff can demonstrate administrative remedies were unavailable.

15     D.  Remedies Unavailable

16     Plaintiff argues that he was deliberately prevented from availing himself of the
17 grievance process because his staff misconduct appeals were "destroyed, never given a log
18 number, or wantonly held[,] then sent back to plaintiff falsely claiming plaintiff violated the 15

---

[7] In his opposition, plaintiff stated he attempted to obtain an Olson or central file review to "get copies of 602s that were screen[ed] out fraudulently to show the court more proof of [plaintiff] filing proper 602 forms and prison officials committing misconduct to prevent [plaintiff] from properly exhausting administrative remedies," (dkt. no. 51 at 2), but plaintiff's request was denied because the Attorney General had plaintiff's central file. (Id.) Plaintiff provided a copy of his May 10, 2011 request to view the central file. (Dkt. No. 51 at 17.) The request notes plaintiff sought review about a month prior, and on May 10, 2011, sought review A.S.A.P. (Id.) The request form provided for a request for supervisor review, which plaintiff did not complete. On September 29, 2011, the court ordered plaintiff to forthwith seek an Olson or central file review, and to immediately inform the court if the central file was still unavailable. (Dkt. No. 58.) Also, the court granted plaintiff an additional thirty days in which to submit copies of appeal forms to support his opposition to the motions. (Id.) More than forty days have passed, and plaintiff has not responded in any way to the September 29, 2011 order.

day time limit and screened out under this falsehood." (Dkt. No. 51 at 1.)  In support of his position, plaintiff claims he heard Officer J. Dunks tell another inmate that "if an inmate submits a staff complaint especially if it's on officers in D-7 or D-8 building, it won't make it through/get filed or they will get [the] complaint screened out." (Dkt. No. 51 at 15.)  Plaintiff also provided a copy of two articles from the Sacramento Bee concerning allegations of abuse at HDSP and noting the California Senate's intention to investigate the allegations of abuse.  (Dkt. No. 51 at 9, 11, 13.)  Neither article addresses plaintiff personally, or the specific claims at issue herein.

Plaintiff primarily relies on Sapp v. Kimbrell, 623 F.3d 813, 825 (9th Cir. 2010), and Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010), to support his contention that administrative remedies were not available to him for the instant claims.  In Sapp, the Ninth Circuit found that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA."  Id., 623 F.3d at 823.  The court applied a two-part test to determine whether this exception applied:

> the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

Id. at 823-24.  In Nunez, the Ninth Circuit excused a prisoner's failure to timely exhaust administrative remedies because the prisoner "took reasonable and appropriate steps to exhaust his [claim] and was precluded from exhausting, not through his own fault but by the Warden's mistake."  Id., 591 F.3d at 1224.

Plaintiff stated, in conclusory fashion, that officials destroyed or mishandled these

////

////

////

appeals. (Dkt. No. 51 at 1.) However, plaintiff provided no facts or evidence[8] to support this conclusion. Plaintiff does not identify the date he submitted the appeal, or to whom he gave the appeal. Plaintiff does not state that he inquired about the status of the appeals or attempted to re-file the appeals once he heard nothing further. Similarly, plaintiff did not assert that he filed a new administrative grievance challenging the alleged refusal of prison officials to provide informal review of the subject grievance. Thus, plaintiff provided no basis to conclude that plaintiff made a bona fide effort to obtain informal review of his grievances, and that such review was "effectively unavailable." Nunez, 591 F.3d at 1226.

        Plaintiff also failed to demonstrate he filed a first level grievance and that the grievance was improperly screened out. Sapp, 623 F.3d at 823-24. Because plaintiff is required to exhaust his claims through three levels of appeals, it is insufficient for plaintiff to submit an informal appeal or first appeal and then consider it exhausted because he heard nothing further, yet took no further action to inquire or appeal to the next level. Plaintiff did not identify any of the appeals noted as screened out by defendants as appeals filed to exhaust the remaining four claims. Plaintiff has not demonstrated that he "took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by [a third party]." Id., 591 F.3d at 1224. Plaintiff must make an effort to exhaust his appeals through all three levels of review before he files a complaint in federal court, as required by Booth. See Brown, 422 F.3d at 934-35; Stutzman v. Wilson, 2009 WL 2901634 at *3-4 (C.D. Cal. 2009) (plaintiff must still pursue remaining levels of review even if his lower level grievances were

---

[8] The newspaper articles and plaintiff's declaration attesting to a statement made to another inmate are inadmissible hearsay, but in any event, fail to provide specific factual support as to plaintiff's efforts to exhaust the instant claims remaining at issue. Plaintiff failed to explain what effect, if any, the alleged statement by Correctional Officer Dunks to another inmate had on plaintiff and his efforts to exhaust the instant, remaining claims. See Cottrell v. Wright, 2010 WL 4806910, *4 (E.D. Cal. 2010) (some of prison official's statement "admissible for its effect on the listener, to explain why plaintiff waited several months before attempting to seek further relief.") Unlike the plaintiff in Cottrell, the issue here is whether plaintiff presented a grievance or grievances which, if pursued through the third level of review, would have exhausted the remaining claims herein. Plaintiff has failed to produce such a grievance.

1 ignored or improperly rejected).

2 Thus, plaintiff has failed to demonstrate that administrative remedies were not
3 available to him for the remaining four claims at issue.

   E. Conclusion re Exhaustion

5 In light of the above, the undersigned recommends that the motion to dismiss
6 plaintiff's claims based on a failure to exhaust administrative remedies be granted, and that
7 defendants Kissinger, Wright, Fletcher, Pickens, Jackson, Plessas, Smith, Boretz, Krause, and
8 Laeres be dismissed from this action.

9 II. State Tort Claims

10 Plaintiff raises state law claims of assault and battery and the intentional infliction
11 of emotional distress against defendants A. Pickens, Martines, Laeres, Plessas, Smith, Kissinger,
12 Fletcher, and Jackson. Plaintiff failed to allege compliance with the California Tort Claims Act
13 in the TAC. Defendants A. Pickens, Laeres, Plessas, Smith, Kissinger, Fletcher, and Jackson
14 move to dismiss plaintiff's state law claims based on plaintiff's failure to timely comply with the
15 California Tort Claims Act.

16 The California Torts Claim Act ("CTCA") requires that a tort claim against a
17 public entity or its employees be presented to the California Victim Compensation and
18 Government Claims Board ("Board"), formerly known as the State Board of Control, no more
19 than six months after the cause of action accrues. See Cal. Gov't. Code §§ 905.2, 910, 911.2,
20 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are
21 conditions precedent to suit. Mangold v. California Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th
22 Cir. 1995); California v. Superior Court (Bodde), 32 Cal.4th 1234, 1239, 13 Cal.Rptr.3d 534
23 (2004). To state a tort claim against a public employee, a plaintiff must allege compliance with
24 the CTCA. Mangold, 67 F.3d at 1477; Karim–Panahi v. Los Angeles Police Dept., 839 F.2d
25 621, 627 (9th Cir. 1988). Tort claims such as the instant claims for assault and battery and
26 intentional infliction of emotional distress are not listed among the exceptions to California

1 Government Code § 905.  Moreover, under California Government Code § 945.4,

> no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with section 900) and Chapter 2 (commencing with section 910) of Part 3 of this division until a written claim therefore has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board.

Cal. Gov't Code § 945.4.  Finally, under California Government Code § 950.2, any suit against a public employee is barred in cases where a plaintiff's action against the agency is barred for failure to present a claim.  Cal. Gov't Code § 950.2.

Defendants produced copies of tort claims submitted by plaintiff.  Plaintiff filed the following claim numbers for incidents occurring on the dates noted:

| | | |
|---|---|---|
| G571572 | July 7, 2006 | (Dkt. No. 42-7 at 2.) |
| G577066 | February 14, 2007 | (Dkt. No. 42-5 at 28.) |
| G573685 | July 2, 2007 | (Dkt. No. 42-6 at 2.) |
| G575725 | March 1, 2008 | (Dkt. No. 42-5 at 18.) |
| G589523 | February 4, 2010 | (Dkt. No. 42-5 at 5, 14.) |

None of the facts underlying the instant remaining state law claims are contained within these five tort claims, nor do the dates of the incidents conform with the June 25, 2008, or October 8, 2008 incidents remaining at issue.  Defendants provided a declaration by J. Reinmiller, custodian of records for the Board, who stated under penalty of perjury that the five claims set forth above are the only claims received by the Board from plaintiff on or before April 15, 2010.  (Dkt. No. 42-5 at 2-3.)  Thus, the record demonstrates that plaintiff did not file a tort claim as to his remaining state law claims.

Rather than concede his failure to file a tort claim, plaintiff contends he is entitled to a number of exceptions.  First, plaintiff argues that his incarceration tolled the deadline for filing a tort claim until he is released from prison.  (Dkt. No. 51 at 4-5, citing Cal. Gov't Code § 945.6(b).)  Section 945.6 states:

> (a) Except as provided in Sections 946.4 and 946.6 and subject to subdivision (b), any suit brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division must be commenced:
>
> (1) If written notice is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail.
>
> (2) If written notice is not given in accordance with Section 913, within two years from the accrual of the cause of action. If the period within which the public entity is required to act is extended pursuant to subdivision (b) of Section 912.4, the period of such extension is not part of the time limited for the commencement of the action under this paragraph.
>
> (b) When a person is unable to commence a suit on a cause of action described in subdivision (a) within the time prescribed in that subdivision because he has been sentenced to imprisonment in a state prison, the time limit for the commencement of such suit is extended to six months after the date that the civil right to commence such action is restored to such person, except that the time shall not be extended if the public entity establishes that the plaintiff failed to make a reasonable effort to commence the suit, or to obtain a restoration of his civil right to do so, before the expiration of the time prescribed in subdivision (a).
>
> (c) A person sentenced to imprisonment in a state prison may not commence a suit on a cause of action described in subdivision (a) unless he presented a claim in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division.

Cal. Gov't Code § 945.6.

The provisions of Section 945.6 govern the timing of a lawsuit brought <u>after</u> the filing of a tort claim. <u>Id.</u>  Section 945.6 describes the amount of time a plaintiff has to bring suit in court after a state agency has denied or failed to act on a claim submitted in accordance with the filing requirements of the CTCA.  See <u>Emmert v. County of Sonoma</u>, 836 F.Supp. 715, 716 (N.D. Cal. 1993) (limitations period not tolled by provision in Tort Claims Act).  The provision of Section 945.6(b) does not serve to toll the deadline for initially presenting a tort claim to the Board because it is qualified by "when a person is unable to commence a suit." <u>Id.</u>  This phrase

speaks to filing a lawsuit, not to filing a tort claim. Moreover, the express terms of California Government Code § 945.6(c) reinforce the requirement that incarcerated persons may not bring a lawsuit unless a tort claim is filed. Here, plaintiff failed to file a tort claim, so the timing provisions of Section 945.6 do not apply.

Second, plaintiff argues that the provisions of California Government Code §§ 911.4 and 911.6 provides for the tolling of the six month deadline, or relief from a late filing of the tort claim. However, Section 911.4 governs applications to the Board to present a late claim, and Section 911.6 governs the grant or denial of such an application by the Board. Plaintiff has not demonstrated that he filed an application to present to the Board a late claim concerning the June 25, 2008, or October 8, 2008 incidents; indeed, plaintiff has not shown he filed a tort claim at all concerning these incidents. Therefore, Sections 911.4 and 911.6 are not applicable here.

Finally, plaintiff attempts to apply the continuing violation doctrine to the timely filing requirement of the CTCA. Plaintiff cites no authority for the application of the continuing violation doctrine to the CTCA. However, even if the doctrine applied, plaintiff has not demonstrated that the remaining defendants continued to violate plaintiff's rights after October 8, 2008. As noted above, only four claims remain pending in this action. One claim alleges excessive force by defendant Jackson occurred on October 8, 2008. The remaining claims allege excessive force and a failure to protect plaintiff, against defendants Pickens, Martines, Laeres, Plessas, Smith, Kissinger, and Fletcher, and relate to incidents that occurred on June 25, 2008; and plaintiff's state law claims against defendants Pickens, Martines, Laeres, Plessas, Smith, Kissinger, Fletcher, and Jackson allege assault and battery and the intentional infliction of emotional distress. "The continuing violation doctrine does not apply where the alleged defendant responsible for the continuing offensive conduct was not the same throughout." McConnell v. Lassen County, California, 2007 WL 1931603 (E.D. Cal. 2007) (citation omitted). The seven defendants named in connection with the June 25, 2008 incident, are not named in connection with the October 8, 2008 incident. For all of these reasons, plaintiff's attempt to rely

on the continuing violation doctrine is also unavailing.

Accordingly, plaintiff's state law claims are barred because plaintiff failed to allege facts demonstrating or excusing compliance with the CTCA filing requirements. Defendants' motion to dismiss plaintiff's state law claims should be granted.[9]

III. Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. The April 19, 2011 motion to dismiss filed by defendants Kissinger, Wright, Fletcher, Pickens, Jackson, Plessas, and Smith (dkt. no. 42) be granted;

2. The July 18, 2011 motion to dismiss filed by defendants Boretz, Krause, and Laeres (dkt. no. 53) be granted;

3. Plaintiff's state law claims be dismissed; and

4. Defendants Kissinger, Wright, Fletcher, Pickens, Jackson, Plessas, Smith, Boretz, Krause, and Laeres be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

////
////
////
////

---

[9] Defendant Martines has not appeared in this action.  However, all of plaintiff's state law claims, including those against defendant Martines, should be dismissed because plaintiff cannot state a cognizable tort claim absent compliance with the CTCA.

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 15, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

jone2133.mtd